UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------X
CHARLES ROBBINS,                                  :
                          Plaintiff,              :
                                                  :
            -v-                                   :
                                                  :        23-cv-10619 (LJL)
CANDY DIGITAL INC.,                               :
FANATICS, LLC,                                    :        OPINION AND ORDER
FANATICS HOLDINGS, INC.,                          :
SCOTT LAWIN, and                                  :
ANTHONY FITZGERALD                                :
                          Defendants.             :
                                                  X
-------------------------------------------------------------------
```

<table>
<tr><td>USDC SDNY</td></tr>
<tr><td>DOCUMENT</td></tr>
<tr><td>ELECTRONICALLY FILED</td></tr>
<tr><td>DOC #:_____</td></tr>
<tr><td>DATE FILED: _8/18/2025__</td></tr>
</table>

LEWIS J. LIMAN, United States District Judge:

Defendants Candy Digital Inc. ("Candy Digital"), Scott Lawin ("Lawin") and Anthony Fitzgerald ("Fitzgerald" and, together with Candy Digital and Lawin, the "Candy Defendants") move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 99. Defendants Fanatics, LLC ("Fanatics") and Fanatics Holdings, Inc. ("Fanatics Holdings" and with Fanatics the "Fanatics Defendants") also move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint against them. Dkt. No. 38.

For the following reasons, the Candy Defendants' motion to dismiss the complaint is granted in part and denied in part. The Fanatic Defendants' motion to dismiss is denied.

## BACKGROUND

The Court first describes the well-pleaded allegations of the First Amended Complaint ("Complaint") which the Court accepts as true for purposes of these motions to dismiss. It then describes the proceeding in New York State Court and before the New York State Division of Human Rights.

## I.      The Allegations of the Complaint

Candy Digital is a digital collectibles technology company, incorporated in Delaware with its principal offices in New York, New York.  Complaint ¶¶ 6, 12.  At all relevant times, it had at least fifty employees.  *Id.* ¶ 12.  Lawin was CEO of Candy Digital.  *Id.* ¶ 13.  He resides in New York.  *Id.* ¶ 8.  Fitzgerald was Head of Talent Acquisition & People at Candy Digital.  *Id.* ¶ 14. He resides in New Jersey and is employed in New York.  *Id.* ¶ 7.

Fanatics Holdings and Fanatics are incorporated in Delaware with their principal offices in New York, New York.  *Id.* ¶¶ 9–10.  Fanatics is indirectly owned by Fanatics Holdings.  *Id.* ¶ 9. Fanatics Holdings, Fanatics, and their predecessors in interest operate under the name "Fanatics" and consider themselves to be one entity.  *Id.* ¶ 11.  The Fanatics Defendants are online manufacturers and retailers of licensed sportswear, sports collectibles, sports merchandise, and digital collectables.  *Id.* ¶ 16.

At all relevant times, Fanatics Holdings owned a controlling stake in Candy Digital.  *Id.* ¶ 17.  The Fanatics Defendants required Candy Digital to appoint board members and a board chair of Fanatics' choosing.  *Id.* ¶ 18–19.  The Fanatics Defendants shared common management and resources with Candy Digital, including guidance with regards to and control over employment matters.  *Id.* ¶ 29.  Fanatics reviewed Candy Digital's employment policies and communicated changes to Candy Digital employees.  *Id.* ¶¶ 22, 30.  Fanatics' executives supervised and directed Candy Digital employees when the companies engaged in joint transactions.  *Id.* ¶ 24.

Charles Robbins ("Plaintiff" or "Robbins") was Vice President of Engineering at Candy Digital.  *Id.* ¶ 39.  He began his employment on or around November 1, 2021.  *Id.*  Fanatics' Chief Technology Officer ("CTO") conducted Plaintiff's final interview and Plaintiff would not have been hired without his approval.  *Id.* ¶¶ 38, 40.  While he was employed by Candy Digital, Plaintiff led the company's engineering team, which was responsible for developing complex digital

products and platforms. *Id.* ¶ 45. Fanatics' Chief Information Security Officer met monthly with Plaintiff to align Candy Digital's and Fanatics' security policies. *Id.* ¶ 41.

At some unspecified point prior to May 2022, Plaintiff adopted his sister's six-year-old biological daughter after his sister died suddenly. *Id.* ¶ 52. Lawin and Fitzgerald were aware of Plaintiff's decision to adopt. *Id.* On or about May 12, 2022, after the final hearing on his daughter's adoption, Plaintiff emailed Lawin, notifying Lawin of his intent to take parental leave for twelve weeks later that year pursuant to the Family and Medical Leave Act, 28 U.S.C. §§ 2601 *et seq.* ("FMLA"). *Id.* ¶ 55.

That same day, Fitzgerald exchanged messages with his executive assistant, Madeline Littlefield, about terminating Plaintiff's employment. *Id.* ¶ 65. Fitzgerald stated that he was "now dealing with the Charlie situation" and "we gotta get this guy out." *Id.* After Littlefield expressed agreement, Fitzgerald stated: "Hes trying to be sneaky and pull some shit so we are just going to have to be civil with him. I am putting my efforts into finding a CTO." *Id.* Littlefield replied: "ya the timing has to be right." *Id.*

The Candy Defendants denied Plaintiff's request for leave on the grounds that he was not eligible for such leave because at the time of the request he had not worked at the company for one year. *Id.* ¶ 88. Plaintiff responded indicating that he was intending to take parental leave in the future and no earlier than November 2, 2022, after he became eligible for leave. *Id.* ¶ 87.

The Candy Defendants did not inform Plaintiff of his future FMLA eligibility or of his current rights under Candy Digital's policies. *Id.* ¶ 57. Under Candy Digital's employee handbook, but unbeknownst to Plaintiff at the time, he was eligible for paid parental leave within one year of welcoming a new child. *Id.* ¶ 63. On at least two other occasions, Plaintiff asked if

there were other Candy Digital funded benefits that would be available for parental leave, and the company did not provide this information. *Id.* ¶ 62.

In July 2022, two months after Plaintiff gave notice of his intent to take parental leave, the Candy Defendants terminated Plaintiff's employment. *Id.* ¶¶ 55, 70. Plaintiff alleges that this termination occurred after the Candy Defendants sought and received approval from the Fanatics Defendants. *Id.* ¶¶ 66, 70. At Plaintiff's termination meeting, Fitzgerald told Plaintiff that the decision was not based on his performance and offered to write Plaintiff a recommendation letter in the future. *Id.* ¶ 72. Plaintiff was replaced by an employee with the same responsibilities who did not have children. *Id.* ¶ 74.

The complaint alleges that Lawin expressed hostility to employees with families while Robbins was working at Candy Digital. *Id.* ¶ 48. On one occasion, a Candy Digital employee working with Plaintiff stated in a team message on Slack that a twelve-hour workday for an individual with a young child and a family was tough. *Id.* Lawin, who had been sent a copy of the those messages, sent a message to Plaintiff and asked whether prioritizing a work-life balance over the needs of the business was an attitude prevalent across the engineering team. *Id.* ¶ 48. At that time, there were four senior members of Plaintiff's engineering team who were parents. *Id.* ¶ 50. Shortly after the message and Plaintiff's notice of his intention to take leave, the Candy Defendants terminated the employment of three of the members of the engineering team who were parents of young children. *Id.*

## II.    New York State Proceedings[1]

On December 8, 2022, Plaintiff filed a complaint with the New York State Division of Human Rights ("DHR") against Candy Digital alleging discrimination on the basis of familial

---

[1] The Court may take "judicial notice of the related actions filed by plaintiff in the Supreme Court and Appellate Division of the State of New York as well as plaintiffs filings and decisions

status and retaliation for opposition to discrimination in violation of New York State Human Rights Law ("NYSHRL"), New York City Human Rights Law ("NYCHRL"), and FMLA. Dkt. No. 100-1. Plaintiff alleged that he was "discriminated against on the account of his familial and caregiver status and retaliated against for requesting parental leave and for advocating for Candy to have non-discriminatory policies towards individuals based on family/caregiver status." *Id* at 4.

The facts alleged by Plaintiff in his DHR complaint mirror those alleged in his Complaint in some respects and add to them in other respects. Plaintiff alleges that he was discriminated against based on his choice to work at home to protect his family after several COVID-19 outbreaks in the office. *Id*. Lawin allegedly engaged in passive aggressive behaviors in response, such as expressing annoyance with Plaintiff when he was not in the office and moving meetings outside of normal working hours. *Id*. Plaintiff also alleges that he was discriminated and retaliated against based on his notice of an intent to exercise his right to take parental leave. *Id*. He states that Candy initially denied his request on the grounds that he was not eligible because had had not worked for the company for one year. Additionally, Candy Defendants did not inform him of other available benefits at that time or in response to two further inquiries into other available benefits. *Id*. at 4–5. Lawin asked Plaintiff whether prioritizing a work-life balance over the needs of the business was an attitude prevalent across the engineering team. *Id*. at 5. Three weeks after this interaction and a mere two months after Plaintiff's notice of his intent to take parental leave, his employment was wrongfully terminated. *Id*. He claimed that he was not terminated for performance reasons and that his position was given to an individual who had no children. *Id*.

---

before the NYSDHR." *Hargrove v. New York City Sch. Const. Auth.*, 2013 WL 2285173, at *4 (E.D.N.Y. May 23, 2013).

Shortly after the interaction, three out of the four members of the engineering team with small children were terminated.  *Id.*

During the course of the DHR investigation, Plaintiff provided information and documents, some of which are outside the scope of the current complaint, to the State investigator.  He provided Lawin's Slack messages to his executive assistant concerning terminating Plaintiff.  Dkt. No. 114-10.  Candy's counsel also provided the familial/caregiver status of current and former employees.  Dkt. No. 114-7.  These figures show that Candy Digital retained at least forty-one parent/caregiver employees, including five at Plaintiff's employment level or higher.  Dkt. No. 114-8 at 11.  Of the fifteen employees—inclusive of Plaintiff—terminated in July 2022, seven did not have families and were not caregivers.  *Id.*  Candy Digital also claimed two managers and a director were on parental leave between March 2022 and October 2023.  Dkt. No. 114-2 at 65.  The investigator interviewed the coworker whose concerns about work-life balance preceded Lawin's questioning of the engineering team's priorities.  Dkt. No. 114-8 at 16.  The coworker believed that Candy Defendants' financial explanation for the termination of Plaintiff and themselves was pretextual, but attributed conflicts between Plaintiff and other members of leadership to differing technical understandings and non-discriminatory office politics.  *Id.*  Candy Defendants supplied human resources records documenting issues with Plaintiff's interpersonal relations which they claimed motivated his dismissal.  Dkt. No. 114-2 at 12–19.  DHR also reviewed Plaintiff's email exchange concerning leave resulting from his niece's adoption.  *Id.* at 21–22.  An audio recording of Plaintiff's termination was provided to DHR.  Dkt. No. 114-10.

On June 22, 2023, NYSDHR issued a Determination and Order After Investigation of Plaintiff's claim of discrimination and retaliation (the "DHR Order").  The NYSDHR determined that there was no probable cause to believe that the Candy Defendants had engaged in the unlawful

discrimination and retaliation of which Plaintiff complained.  Dkt. No. 100-2.  The determination

construed Plaintiff's complaint as limited to violations of NYSHRL.  *Id.* at 1.  The DHR Order

first summarized the competing contentions of the parties.  Plaintiff contended Candy Defendants

discriminated on the basis of familial status when they terminated him and three other engineers

that were caretakers for children, and that the termination was also done in retaliation for his

intended use of parental leave.  *Id.* at 2.  The Candy Defendants contended Plaintiff was not a

victim of discrimination, but rather was selected for termination during a necessary reduction in

staff due to persistent performance issues unaddressed despite feedback and coaching.  *Id.* at 3.

The NYSDHR concluded that:

> The Complainant failed to proffer evidence connecting his class membership to any
> action taken against him by the Respondent.  The investigation revealed that even
> if the Complainant was able to refute the reasons offered by the Respondent for
> how he was treated, he would still be unable to connect familial status, opposed
> discrimination/retaliation to the Respondent's actions.

> . . . The investigation revealed that the Respondent retained at least forty-one (41)
> employees who were parents/caregivers, including five (5) who are at Vice
> Presidential level or at a higher employment level.  Additionally, three (3)
> employees were out on parental leave and returned to work after the July 2022
> reduction in force, and that two (2) of those three employees (3) were out on
> parental leave when the Complainant provided notice of his intent to take FMLA.
> The investigation revealed that of the fifteen (15) employees who were laid-off
> effective July 14, 2022, seven (7) of the employees did not have families or were
> caregivers.

> The investigation revealed that the Complainant failed to provide any evidence that
> he filed either an internal or external complaint in which he alleged discrimination
> based on his protected class status.  It appears from the record that the Complainant
> did not engage in a protected activity prior to the filing of the instant complaint.
> Therefore, the Complainant cannot establish the requisite causal connection
> between protected activity and an adverse employment action.

*Id.* at 3–4.  Put simply, DHR found no probable cause for Plaintiff's retaliation claims because he

had not engaged in protected activities such as filing a complaint.  *Id.* at 4.  DHR also determined

that Candy Defendants "articulated a legitimate, non-discriminatory reason for how the Complainant was treated which have not been proven to be a pretext for discrimination." *Id.*

On August 21, 2023, Plaintiff petitioned the New York Supreme Court for review pursuant to Article 78 of the New York Civil Practice Law and Rules. Dkt. No. 100-3. Plaintiff alleges that the NYSHDR investigation was a "sham" which "failed to include interviews of all parties, proper discovery, or review of clear and convincing evidence of discrimination and retaliation." *Id.*¶ 22. Plaintiff asserted the DHR Order was arbitrary and capricious and misapplied the law by discounting the evidence that, after he requested family leave, the Candy Defendants started "scheming to fire him." *Id.* ¶ 25. He also challenged the DHR investigation on the basis that it was abbreviated and one-sided due to the investigator's decision not to interview Plaintiff or, upon information and belief, the Candy Defendants. *Id.* ¶¶ 13–15. As relief, Plaintiff sought an order vacating and annulling the DHR Order and permitting him to commence litigation by filing a discrimination claim against the Candy Defendants. *Id.* at 18.

On January 21, 2025, the Supreme Court upheld DHR's Order and determined it was not arbitrary or capricious, made in violation of lawful procedures, or affected by an error of law. Dkt. No. 100-5; *Robbins v. New York State Div. of Human Rights*, 2025 WL 257214 (N.Y. Sup. Ct. Jan. 21, 2025). The Supreme Court found the investigation gave a full and fair opportunity to both parties to present their claims and rebuttals. *Id.* at *2. The Court stated as follows:

> Here, the Court denies Petitioner's Verified Petition and finds that petitioner failed to demonstrate that NYSDHR's June 22, 2023 determination was arbitrary or capricious, made in violation of lawful procedures, or affected by an error of law. NYSDHR disagreed with Petitioner's argument that he was terminated based on his familial/caregiver status and credited Respondents' argument that Petitioner was selected for layoff as part of a reduction in force based on his performance issues, including complaints about his failure to act professionally and collaboratively with team members, failure to attend or participate in meetings, and failure to respond to feedback regarding performance issues. While NYSDHR did not interview Petitioner or CD Respondents during its investigation into

Petitioner's claims, which NYSDHR was not required to do, NYSDHR gave a full and fair opportunity to both parties to present their claims and subsequent rebuttals. NYSDHR took into consideration position statements and evidence in written submissions from all parties, whose counsel also held direct conversations with the NYSDHR's investigator.  NYSDHR also interviewed Mr. Furfero, who Petitioner himself identified as a potential witness of CD Respondents' alleged discriminatory acts.

Based upon the foregoing, this Court finds that, contrary to Petitioner's position, NYSDHR's determination did address his claims and evidence but simply rejected them.  The NYSDHR investigation determined that the record lacked evidence to support Petitioner's complaint and found that, based on the record, Petitioner "did not engage in a protected activity prior to the filing of" his complaint with NYSDHR.  (See NYSCEF Doc. 20)  Therefore, there was no need for further discussion in the determination as to whether the denial of probable cause was motivated by bad faith or acted arbitrarily or capriciously.  The Court finds that the determination was rationally based.

*Id*.  The court accordingly ordered Plaintiff's petition dismissed.  *Id.*

## PROCEDURAL HISTORY

The original complaint in this case was filed on December 5, 2023.  Dkt. No. 1.  The complaint alleged two causes of action against all defendants: (1) retaliation in violation of the FMLA, *id.* ¶¶ 52– 59, and (2) interference in violation of the FMLA, *id.* ¶¶ 60–67.  The retaliation claim was based on the allegations that "Defendants eventually terminated Plaintiff because he requested to take parental leave."  *Id.* ¶ 55.  The interference claim was based on the allegations that "[w]hen Plaintiff notified Defendants of his intent to take FMLA leave once he became eligible, Defendants instead denied Plaintiff's request on the grounds that he was not eligible because he had not worked for the company for 1 year, and furthermore deliberately chose not to inform him of his future eligibility under the FMLA."  *Id.* ¶ 63.

On March 11, 2024, the Candy Defendants filed a motion to dismiss or, in the alternative, for summary judgment, along with a memorandum of law and declaration in support of the motions.  Dkt. Nos. 30, 34–35.  On the same day, the Fanatics Defendants filed a motion to dismiss and a memorandum of law in support.  Dkt. Nos. 38–39.  On April 18, 2024, Plaintiff filed a

memorandum of law in opposition to the Fanatics Defendants' motion. Dkt. No. 52. On April 22, 2024, Plaintiff filed a memorandum of law in opposition to the Candy Defendants' motion and supporting declarations from both Plaintiff and Plaintiff's counsel. Dkt. Nos. 52–55. On May 2 and 3, 2024, Defendants filed reply memoranda of law in support of their motions. Dkt. Nos. 59–60.

On December 9, 2024, the Court denied the Candy Defendants' motion to dismiss and alternative motion for summary judgement and granted Fanatics Defendants' motion to dismiss without prejudice. *Robbins v. Candy Digital Inc.*, 2024 WL 5056429 (S.D.N.Y. Dec. 9, 2024). The Court determined that the Candy Defendants would be liable for FMLA retaliation or interference based on Plaintiff's allegation that he would have worked for Candy Defendants for over a year at the time of his intended leave. *Id.* at *11. The Court denied summary judgment because the evidence before the Court could not resolve all issues of material fact. *Id.* at *16. The Fanatics Defendants' motion to dismiss was granted as Plaintiff had not pleaded facts which could establish Fanatics Defendants as Plaintiff's employer for purposes of FMLA liability under the "economic reality," "single integrated enterprise," or "joint employer" tests. *Id.* at *22–23. Plaintiff was granted thirty days to file an amended complaint limited to alleging additional facts necessary to hold the Fanatics Defendants liable under the FMLA. *Id.* at *23.

On January 8, 2025, Plaintiff filed his First Amended Complaint. *See* Complaint. The complaint restated the same two causes of action as the original complaint and pleaded additional facts concerning the relationship between the Candy and Fanatics Defendants. *Id.* The Candy Defendants filed a motion to dismiss on January 29, 2025, along with a memorandum of law and exhibits. Dkt. Nos. 99–100. On the same day, the Fanatic Defendants filed a motion to dismiss and a memorandum of law. Dkt. Nos. 102–103.

On March 19, 2025, Plaintiff submitted a memorandum of law, declaration, and exhibits in opposition to the Candy Defendants' motion to dismiss.  Dkt. Nos. 113, 114.  On March 26, 2025, Plaintiff filed a memorandum of law opposing the Fanatics Defendants' motion to dismiss. Dkt. No. 116.  The Candy Defendants filed a reply memorandum of law on April 4, 2025.  Dkt. No. 117.  The Fanatics Defendants filed a reply memorandum of law on April 16, 2025.  Dkt. No. 118.

## LEGAL STANDARD

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all factual allegations in the complaint and draw all possible inferences from those allegations in favor of the plaintiff.  *See Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004).  This requirement "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must therefore offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).  The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011) (same).

The Court can dismiss a claim under Rule 12(b)(6) based on collateral estoppel when that defense is "clear from the face of the complaint." *White v. Bridge Inc.*, 2019 WL 4805896, at *3

(S.D.N.Y. Sept. 30, 2019) (Nathan, J.) (quoting *Conopco, Inc. v. Roll Int'l.*, 231 F.3d 82, 86–87 (2d Cir. 2000)).  Additionally, the court may take judicial notice of the fact of public records, such as prior adjudications.  *See Johnson v. Pugh*, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) ("A court may take judicial notice of matters of public record, including pleadings, testimony, and decisions in prior state court adjudications, on a motion pursuant to Rule 12(b)(6).").

## DISCUSSION

Two motions are before the Court.  The Candy Defendants move to dismiss the complaint for failure to state a claim due to collateral estoppel (also known as issue preclusion) arising from the earlier New York state proceeding.[2]  Dkt. No. 99.  The Fanatics Defendants argue Plaintiff's Complaint contains insufficient factual allegations to find that they are his employer for FMLA purposes under the "economic reality," "single integrated enterprise," or "joint employer" tests.  Dkt. No. 102.  The Court turns first to the Candy Defendants' motion because if it were granted in whole, it would be fully dispositive of the claims against the Fanatics Defendants.  Concluding that the Candy Defendants' motion must be denied in part, the Court proceeds to consider the Fanatics Defendants' motion to dismiss.  *Id.*

## I.      The Candy Defendants' Motion to Dismiss

The Candy Defendants argue that both of Plaintiff's FMLA claims are precluded by findings made by the DHR in the course of reaching its No Probable Cause determination.  Dkt.

---

[2] The related doctrine of claim preclusion, sometimes referred to as res judicata, "prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated."  *Whitfield v. City of New York*, 96 F.4th 504, 523 n.16 (quoting *Lucky Brand Dungarees v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020)).  Whether an Article 78 proceeding gives rise to claim preclusion is analyzed under a different framework.  *See id.; Williams v. Vista on 5th*, 2025 WL 1177629, at *1 n.1 (2d Cir. Apr. 23, 2025) (summary order) ("*Whitfield* explicitly declined to address issue preclusion.").

No. 100 at 7–8.  Plaintiff responds that the Candy Defendants' argument is an improper second motion to dismiss and that it cannot be resolved without converting the motion into one for summary judgment.  He argues further that, on the merits, collateral estoppel does not apply because Plaintiff was denied a full and fair opportunity to litigate his claims before the DHR and the issues resolved by the DHR were not identical or substantially similar to those presented in his federal FMLA complaint.  Dkt. No. 113 at 9–10, 12.

### A.    Propriety of Candy Defendants' Current 12(b)(6) Motion

Plaintiff argues the Candy Defendants' current 12(b)(6) motion is barred because it "rais[es] a defense or objection that was available to the party but omitted from its earlier motion." Dkt. No. 113 at 9–10; *see* Fed. R. Civ. P. 12(g)(2).  He argues that at the time the Candy Defendants moved to dismiss the initial complaint, the DHR Order had already been issued but the Candy Defendants made no argument based on collateral estoppel.  *Id.* at 10.  Accordingly, he argues that the Candy Defendants cannot now move to dismiss on a ground that they had available at the time of their original motion but chose not to argue.  *Id.*  The Candy Defendants respond that their motion to dismiss based on collateral estoppel is not waivable and that it would have been reckless for them to have made this specific argument before the New York State Supreme Court issued its Decision and Order denying Plaintiff's application to vacate and annul the DHR determination. Dkt. No. 117 at 2–3.

"[A] party may not move to dismiss an amended complaint on the basis of defenses it could have raised, but did not, when moving to dismiss an initial complaint." *Stevens & Co. LLC v. Espat*, 2025 WL 950989, at *4 (S.D.N.Y. Mar. 28, 2025), *reconsideration denied*, 2025 WL 1425324 (S.D.N.Y. May 16, 2025).  As a technical matter, the Candy Defendants could have moved to dismiss the complaint on issue preclusion grounds as soon as the DHR Order was issued.  Under the FMLA, the findings of a state administrative body acting in a judicial

capacity are entitled to the same issue preclusive effect that they would be accorded under state law. *See Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 728 (2d Cir. 2001). And while the Supreme Court could still have vacated the DHR Order at that time, "[t]he rule in New York is that the pendency of an appeal does not prevent the use of the challenged judgment as the basis of collateral estoppel." *Fuller v. Interview, Inc.*, 2014 WL 12935839, at *1 (S.D.N.Y. Aug. 6, 2014) (Sullivan, J.) (quoting *Anonymous v. Dobbs Ferry Union Free Sch. Dist.*, 797 N.Y.S. 2d 120, 121 (2d Dep't 2005)); *Chariot Plastics, Inc. v. United States*, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998) (noting that "collateral estoppel appl[ies] once final judgment is entered in a case, even while an appeal from that judgment is pending.").

That said, had Plaintiff's state court challenge to the DHR Order not been decided, there may have been good reason for the Court to defer ruling on a motion by the Candy Defendants to dismiss the action based on collateral estoppel and thus good reason for the Candy Defendants not to have asked the Court to dismiss the action based on collateral estoppel. If the New York Supreme Court vacated the DHR Order, the conclusions reached therein would no longer have issue preclusive effect. *See Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 970 F.2d 1138, 1146 (2d Cir. 1992) ("It is well-settled in this circuit that a vacated order has no collateral estoppel effect."); s*ee also Universal City Studios, Inc. v. Nintendo Co.*, 5789 F. Supp. 911, 919 (S.D.N.Y. 1983) ("A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of conclusive effect, both as res judicata and as collateral estoppel.") (citation omitted). And, if the Court had dismissed this case on the basis of an administrative order that was vacated shortly thereafter, the invariable result would have been to invite a motion for that order to be set aside under Rule 60(b)(5) of the Federal Rules of Civil Procedure. *See Ashmore v. CGI Grp.*, 860 F.3d 80, 90 (2d Cir. 2017) (noting that where a "final judgment is entered based on

the preclusive effect of another [] order, but the other [] order is later overturned on appeal, a party

may generally move for the judgment to be set aside"); *Boomer v. Bruno*, 134 F. Supp. 2d 262,

268 n.4 (S.D.N.Y. 2001) ("The Court notes that it will vacate this Order should the decision of the

Court of Claims be overturned on appeal.").  The Candy Defendants thus would have been asking

the Court for what would have been, in effect, a conditional ruling—conditional upon the DHR

Order not being overturned by the New York State Supreme Court.  The Court in that circumstance

would have been well advised to wait to issue "final judgments based on issue preclusion until the

order creating the preclusive effect is no longer appealable." *Ashmore*, 860 F.3d at 90; *see also*

Restatement (Second) of Judgements § 16 (A.L.I. 1982) (courts asked to accord preclusive effect

to judgment "may be well advised to stay its own proceedings to await the ultimate disposition of

the judgment on appeal.").  The only result of that arguably premature motion to dismiss would

have been to multiply proceedings before this Court.

      In any event, even if issue preclusion could have been raised on an earlier motion, the

Second Circuit has held that a "motion to dismiss for failure to state a claim . . . that is styled as

arising under Rule 12(b) but is filed after the close of pleadings, should be construed by the district

court as a motion for judgment on the pleadings under Rule 12(c)." *Patel v. Contemporary*

*Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).  And the "standard for granting a Rule

12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure

to state a claim." *Id.*  Put differently, "the defense of failure to state a claim is not waivable."

*Espat*, 2025 WL 950989, at \*5 (quoting *Patel*, 259 F.3d at 126); *see* Fed. R. Civ. P. 12(h)

(explaining that "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . .

by a motion under Rule 12(c)").  So there is "no point" in denying the Rule 12(b)(6) motion as the

movant "would be free to make an essentially identical motion pursuant to Rule 12(c)." *Leighton*

*v. Poltorak*, 2018 WL 2338789, at *1 (S.D.N.Y. May 23, 2018).  *See also* 5C Wright & Miller's Federal Practice and Procedure § 1361 (3d ed. 2025) ("With respect to motions to dismiss for failure to state a claim filed simultaneously with—or even after—an answer, the proper approach is to treat them as motions for judgment on the pleadings under Rule 12(c).").

Defendants argue that permitting the Candy Defendants to raise the collateral estoppel defense here would run afoul of Fed. R. Civ. P. 12(g), which states that a party "that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  By its own terms, however, Rule 12(g) exempts certain defenses pursuant to 12(h)(2), which states in turn that a motion for "failure to state a claim upon which relief can be granted" can be raised "by a motion under Rule 12(c)."  Fed. R. Civ. P. 12(h)(2).[3]  Indeed, "[i]n this context, Rule 12(c) is merely serving as an auxiliary or supplementary procedural device to determine the sufficiency of the case before proceeding any further and investing additional resources in it."  5C Wright & Miller's Federal Practice and Procedure § 1367 (3d. ed. 2025).  "A collateral estoppel defense [] may be analyzed on a Rule 12(c) motion where all the relevant facts are set forth in the complaint and in matters of which the Court may take judicial notice."  *U.S. Fidelity & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobas*, 2001 WL 300735, at *23 n.17 (S.D.N.Y. March 27, 2001) (citing *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86–87 (2d Cir. 2000)).  Accordingly, the Court has the authority to address the Candy Defendants' arguments.

Plaintiff next argues that because the Candy Defendants rely on evidence outside the pleadings, their motion must be considered one for summary judgment and, because the Candy

---

[3] That would leave several defenses available under Rule 12(b) subject to Rule 12(g)'s strict bar, including lack of personal jurisdiction, improper venue, insufficient process, and insufficient service of process.  Fed. R. Civ. P. 12(h)(1).

Defendants have already made one motion for summary judgment, their motion should be denied as an improper successive motion for summary judgment. Dkt. No. 113 at 11.

A court may take judicial notice of prior lawsuits and related materials, not for the truth of their contents, without converting the motion into one for summary judgment. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). Thus, "[w]hen a motion to dismiss is premised on the doctrine of collateral estoppel, a court is permitted to take judicial notice of and consider the complaints and the record generated in both actions without having to convert the motion to dismiss into a summary judgment motion." *Sulzer Mixpac AG v. DXM Co.*, 2022 WL 4280343, at *4 (S.D.N.Y. Sept. 15, 2022); *see Green v. McKoy*, 2023 WL 2742143, at *9 (N.D.N.Y. Mar. 31, 2023); *MMA Consultants 1, Inc. v. Republic of Peru*, 245 F. Supp. 3d 486, 499–500 (S.D.N.Y. 2017), *aff'd*, 719 F. App'x 47 (2d Cir. 2017); *Peralta v. St. Lukes Roosevelt Hosp.*, 2015 WL 3947641, at *1 n.1 (S.D.N.Y. June 26, 2015).

The Candy Defendants rely on Plaintiff's DHR complaint, the DHR determination, the Article 78 petition to review the determination, the Supreme Court's ruling on the petition, and the proceeding's docket. Dkt. Nos. 100-1 to 100-5. All documents are available on the New York State Court docket. Dkt. No. 100-4. The Court may consider them not for their truth but to ascertain what was alleged in and determined by the earlier proceedings. *See Sanders v. Sanders*, 2022 WL 16984681, at *1 (2d Cir. Nov. 17 2022) (affirming district court taking judicial notice of judgment and related filings in New Jersey divorce proceedings to resolve 12(b)(6) motion); *Williams v. New York City Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (summary order) ("The district court did not err in considering [plaintiff's] Article 78 petition and state court decision because they were public records, and thus appropriate for judicial notice."); *but see White v. Bridge*, 2019 WL 4805896, at *3 (Nathan, J.) (observing that judicial notice of un-appealed

DHR determination is potentially inappropriate when only provided in defendant's declaration). The Court need not convert the Candy Defendants' motion to one for summary judgment in order to decide whether Plaintiff's claims are barred by collateral estoppel.

### B.    Collateral Estoppel

The rules of preclusion applied to a federal cause of action in federal court depend on the cause of action asserted by a plaintiff.  In all instances, the court is required to accord the judgments of state *courts* the preclusive effect those judgments would receive in state court.  The federal full faith and credit statute, 28 U.S.C. § 1738, entitles "judicial proceedings" in every state of the United States to "the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."  *See Whitfield*, 96 F.4th at 522.  The Supreme Court of the United States has held that that statute "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged," save in the unusual circumstance where a claim in federal court is brought under a "later statute [that] contains an express or implied partial repeal."  *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466, 468 (1982).  As long as state proceedings "satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process clause," they "qualify for the full faith and credit guaranteed by federal law."  *Id.* at 481.

Where the decision from which a party seeks to derive preclusive effect originates not in a state court but in a state administrative agency, the rules differ.  Although Congress has not "expressly or implicitly limited the preclusive effect to be given to the determination of state administrative agencies," *Kosakow*, 274 F.3d at 728, the Supreme Court has "fashioned federal common-law rules of preclusion" that differ based on the administrative agency and process at issue.  *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 794 (1986).  Under *Elliott*, "when a state agency

acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Id.* at 799 (internal citations and quotations omitted). As to the cause of action in the FMLA specifically, the Second Circuit has clarified that in enacting the FMLA, Congress did *not* expressly or implicitly limit the preclusive effect to be given to determinations of state administrative agencies. *Kosakow*, 274 F.3d at 730.[4] Accordingly, even an unreviewed DHR determination of no probable cause is to be given preclusive effect in a follow-on federal case as long as principles of issue preclusion or collateral estoppel would apply under the relevant state law. *Id.* Per New York law, issue preclusion applies "if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Williams v. Vista on 5th*, 2025 WL 1177629, at *1 (2d Cir. Apr. 23, 2025) (summary order) (quoting *Hoblock v. Albany Cnty. Bd. Of Elections*, 422 F.3d 77, 94 (2d Cir. 2005)).

Here, the Court need not reach the federal common law of preclusion as applied to the DHR Order, because the Full Faith and Credit clause as applied to the federal courts through *Kremer* resolves the application of collateral estoppel. The DHR determination of No Probable

---

[4] The same is not true for a plaintiff suing under Title VII, the ADEA, or the ADA. In those statutes, Congress manifested an intent that federal courts not award preclusive effect to state agency determinations. *See Kremer*, 456 U.S. at 470 n.7 ("EEOC review of discrimination charges previously rejected by state agencies would be pointless if federal courts were bound by such agency decisions,"); *Astoria Fed. Sav. & Loan Ass'n v. Solomino*, 501 U.S. 104, 106 (1991) (the ADEA, with its exhaustion requirements, "plainly assume[d] the possibility of federal consideration after state agencies have finished theirs"); *Jones v. New York City Housing Auth.*, 1995 WL 73916, at *2 ("[A] plaintiff who sues in federal court under the employment provisions of the ADA is not precluded from relitigating findings of a state administrative agency that has not been reviewed" because, for the purposes of preclusion, "there is no meaningful difference between the ADA on the one hand and Title VII and the ADEA on the other.")

Cause was reviewed by a state court, which found that the DHR Order was not "arbitrary or capricious, made in violation of lawful procedures, or affected by an error of law," and dismissed Plaintiff's claim.  *Robbins*, 2025 WL 257214 at *2.  If the New York Supreme Court judgment necessarily decided the issue in question and provided the Plaintiff the opportunity for full and fair litigation in compliance with the requirements of Due Process, discussed *infra*, it has preclusive effect in the instant litigation.  *See Yan Yam Koo v. Department of Buildings of City of N.Y.*, 218 F. App'x 97, 99 (2d Cir. 2007).

### C.    Identity of Issue

For collateral estoppel to apply, the party claiming estoppel must demonstrate that "the issue in question was actually and necessarily decided in a prior proceeding."  *Williams*, 2025 WL 1177629 at *1.  That inquiry, in turn, requires an understanding of what Plaintiff is required to allege in the present proceeding, and what was decided in the state court proceedings.

To state a claim for retaliation under the FMLA, Plaintiff was required to allege "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  *Robbins*, 2024 WL 5056429, at *6 (quoting *Graziadio v. Culinary Inst. Of Am.*, 817 F.3d 415, 429 (2d Cir. 2016)).  Plaintiff alleged that he suffered adverse employment action in the form of being treated differently and less preferably than similarly situated employees who did not request FMLA leave, being subject to a hostile work environment and disparate terms and conditions of employment, and of being terminated from his employment.  Complaint ¶ 82.

The issues upon which Plaintiff's FMLA retaliation claim hinges, *i.e.* whether the adverse employment actions he suffered resulted from his exercise of rights protected under the FMLA, were necessarily determined in the State proceedings.  Plaintiff asserted before the DHR that he

was "discriminated and retaliated against based upon his notice to exercise his rights to take parental leave, which he made on or around May 12, 2022". Dkt. No. 100-1 at 4. The DHR explicitly rejected that claim. It determined that the Candy Defendants had "articulated a legitimate, non-discriminatory reason for how [Plaintiff] was treated which ha[d] not been proven to be a pretext for discrimination." Dkt. No. 100-2 at 4. The state court affirmed that conclusion, ruling "[t]he NYSDHR investigation determined that the record lacked evidence to support [Plaintiff's] complaint." *Robbins*, 2025 WL 257214, at *2. The question of whether Plaintiff was the victim of retaliation as a result of his request for FMLA leave was necessarily decided in the state court proceedings and, assuming he had a full and fair opportunity to litigate that issue, his FMLA retaliation claim would be foreclosed. *See Kosakow*, 274 F.3d at 733.

Plaintiff argues that there could be no identity of issues because "Plaintiff's FMLA claims were never addressed by the New York court or the Division of Human Rights," Dkt. No. 113 at 1, and that it is insufficient that his federal claims rests "on the same set of basic facts as those in the DHR-Complaint," *id.* at 13. He argues also that the state proceedings could not have been preclusive of his federal FMLA retaliation claim because state law does not define a request for parental leave as protected activity whereas his federal claim depends upon the request for leave as being protected. Dkt. No. 113 at 14. Plaintiff is correct both that the State proceedings did not explicitly address his FMLA claims and that FMLA leave is not protected under New York law, *see Cooper v. N.Y. State Nurses Ass'n*, 847 F. Supp. 2d 437, 450 (E.D.N.Y. 2012), but here his arguments falter.

The preclusive effect of a state court judgment or administrative order does not depend upon whether the claims asserted in the prior state proceeding are identical to those asserted in the subsequent federal action. *See Kremer*, 456 U.S. at 479. Issue preclusion turns instead upon

whether an issue decided in the first action is dispositive of the same issue that is necessary for the claim in the second action. *Id.* at 479; *Rigopolous v. Am. Museum of Nat. Hist.*, 747 N.Y.S.2d 566, 568 (2d Dep't 2002) (where the "identical issue that is dispositive of the plaintiff's [] cause of action was necessarily decided" in the administrative proceeding, "the defendant satisfied its burden.") The DHR Order found expressly, and the Supreme Court confirmed, that Plaintiff was terminated on the basis of his work performance and conduct, and not as a result of the allegations contained in his DHR complaint detailing his requests for leave and familial status. Dkt. No. 100-2 at 4; *Robbins*, 2025 WL 257214 at *2 (DHR's determination that Plaintiff was terminated based on "a reduction in force based on his performance issues" was not "arbitrary or capricious, made in violation of lawful procedures, or affected by an error of law.") That finding is incompatible with one that Plaintiff was terminated or mistreated as retaliation for any other activity—Plaintiff "could not succeed on" his FMLA claim "consistently with the judgment of the NYHRD that there is no reason to believe he was terminated" on the basis of his adoption and request for parental leave. *Kremer*, 456 U.S. at 479; s*ee also Kosakow*, 274 F.3d at 727 (where the state agency determined that termination was "taken to reduce expenses including a reduction in force" rather than for any discriminatory reason, "that termination would not be in violation of the FMLA."). That dispositive result of the state proceedings "bars" relitigation of that question "even [though] the issue recurs in the context of a different claim." *Wyly v. Weiss*, 697 F.3d 131, 140 (2d Cir. 2012) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).

Plaintiff's subsequent argument that the state court's determination that the DHR Order was not "arbitrary or capricious" means the issue was not "necessarily" decided also falls short. Indeed, in *Kremer,* the Supreme Court expressly rejected the argument made by Justices Blackmun and Stevens in their separate dissents that the state court decision could not preclude the

petitioner's federal claim because the state court did no more than determine that the NYSDHR determination was not arbitrary and capricious without deciding the merits of petitioner's claim. *See Kremer*, 465 U.S. at 492–93 (Blackmun, J., dissenting); *id.* at 510 (Stevens, J., dissenting). The *Kremer* majority held that "[i]t is well established that judicial affirmance of an administrative determination is entitled to preclusive effect" and "[t]here is no requirement that judicial review must proceed *de novo* if it is to be preclusive." *Id.* at 480 n.21. Thus, the New York "Supreme Court's decision that an agency's determination of an issue was not arbitrary and capricious is sufficient to constitute an 'actual and necessary decision of that issue.'" *Mejia v. New York City Health & Hosps. Corp.*, 622 F. App'x 70, 71 (2d Cir. 2015) (summary order) (citing *Kremer*, 456 U.S. at 484); *see also Siji Yu v. Knighted, LLC*, 811 F. App'x 55, 57 (2d Cir. 2020) (summary order).

The Court reaches a different conclusion with respect to Plaintiff's FMLA interference claim. To plead a claim of interference with her FMLA rights, a plaintiff must allege: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." *Graziadio*, 817 F.3d at 424. Plaintiff's claim of FMLA interference rests upon the Candy Defendants' denial of his FMLA leave request and failure to inform him of future eligibility. Complaint ¶ 88.

There is no identity of issue between any facts decided in the prior proceedings and the FMLA interference claim. Neither the DHR Order, nor the Supreme Court on review, necessarily decided any issue that would conclusively resolve Plaintiff's interference claim. The DHR Order noted Plaintiff's allegation that he had requested FMLA leave and was denied on the basis that he

had worked at the company for only six months, but the Order did not decide whether Plaintiff was entitled to FMLA leave at that time, whether his request for leave to commence when he became eligible was a right under the FMLA, or if Defendants interfered with any rights Plaintiff may have possessed under that statute. Dkt. No. 100-2 at 3. Similarly, the New York Supreme Court decision made no findings of law or fact regarding Plaintiff's interference claim, again noting only that he had requested FMLA leave. *Robbins*, 2025 WL 257214, at *2.

As discussed above, the DHR and the New York Supreme Court instead ruled on the propriety of Plaintiff's termination—but that is irrelevant to the establishment of liability from denial of an FMLA leave request and failure to properly inform. *See Robbins*, 2024 WL 5056429 at *6 n.4. At base, the state proceedings did not address Plaintiff's "substantive rights under the [FMLA]," and so could not have decided whether his employer "denied or otherwise interfered" with those rights. *Smith v. Westchester County*, 769 F. Supp. 2d 448, 464 (S.D.N.Y. 2011). Where such claims were both not litigated and not dispositive, there can be no identity of issue sufficient to warrant collateral estoppel. *See Davis v. Halpern*, 813 F.2d 37, 40 (2d Cir. 1987).

### D. Full and Fair Opportunity to Litigate

In addition to identity of the issues, for collateral estoppel to apply, the court must find that "the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Williams*, 2025 WL 1177629 at *1. Plaintiff bears the burden of showing that he did not receive a full and fair opportunity to litigate. *See Moccio v. New York State Off. of Ct. Admin.*, 95 F.3d 195, 201 (2d Cir. 1996), *abrogated on other grounds by*, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). He does not dispute that he received a full and fair hearing in New York State Court. He argues instead that he did not receive a full and fair opportunity before the NYSDHR because (1) he did not receive any type of a hearing where he could confront witnesses; (2) he was not entitled to discovery; (3) he was not permitted

the opportunity to interview material witnesses; (4) the record before the DHR was less developed than it would be before this Court if Plaintiff had discovery; and (5) the Candy Defendants submitted evidence in rebuttal regarding their alleged layoffs without the DHR making that information available to Plaintiff.  Dkt. No. 113 at 17–19.

The state court ruled that "NYSDHR gave a full and fair opportunity to both parties to present their claims and subsequent rebuttals."  *Robbins*, 2025 WL 257214, at *2.  That ruling itself is a finding entitled to issue preclusive effect.  "[N]othing in the record suggests that [Plaintiff] lacked a full and fair opportunity to litigate h[is] Article 78 petition."  *Mejia*, 622 F. App'x at 71.  Moreover, "the general inability to obtain in [an administrative proceeding] all the discovery [a party] might be entitled to in federal court" does not deprive the party of the full and fair opportunity necessary for issue preclusion to attach.  *Moccio*, 95 F.3d at 202; *see also Dolan v. Roth*, 170 F. App'x. 743, 747 (2d Cir. 2006) (summary order) ("We further hold that Dolan had a 'full and fair opportunity' to argue his First and Fourteenth Amendment claims notwithstanding the New York Supreme Court's denial of his discovery request" in Article 78 proceeding.). District courts "have held that a full and fair opportunity to litigate issues in a DHR proceeding exists, even without a hearing, provided the claimant was represented by counsel in the administrative proceeding."  *Janneh v. Regal Ent. Grp.*, 2007 WL 2292981, at *4 (N.D.N.Y. Aug. 6, 2007); *see Mejia*, 622 F. App'x. at 71 (2d Cir. 2015) (applying collateral estoppel when "the Supreme Court also found that [plaintiff] had a full and fair opportunity to litigate in front of the DHR the issue of whether [defendant] terminated her position because of her disability, and nothing in the record suggests that she lacked a full and fair opportunity to litigate her Article 78 petition"); *Jeter v. New York City Dep't of Educ.*, 549 F. Supp. 2d 295, 305 (E.D.N.Y. 2008).

E.    **Due Process**

Finally, Plaintiff argues that the DHR proceeding denied him due process as a result of the investigator's (1) reliance on improper evidence, lack of access to requested materials withheld by Defendants, and disregard of pertinent evidence; (2) failure to interview the parties; and (3) denial of the opportunity to cross-examine Defendants in a hearing.  Dkt. No. 113 at 21.  Plaintiff raises no Due Process issues with the Article 78 proceeding.

Where a previous adjudication does not "satisfy the applicable requirements of the Due Process Clause . . . federal courts are not required to accord full faith and credit to such a judgement."  *Kremer*, 456 U.S. at 482.  However, a state court Article 78 proceeding reviewing a DHR proceeding satisfies the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause and thereby qualifies for preclusive effect.  In *Kremer*, the Supreme Court noted that "[u]nder New York law, a claim of employment discrimination requires the NYHRD to investigate whether there is 'probable cause' to believe that the complaint is true," and gives the claimant an opportunity to present evidence on his own behalf, to challenge the evidence offered by his opponent, and to have the assistance of counsel.  *Id.* at 483.  The law provides too for judicial review of the Department's determinations "to assure that a claimant is not denied any of the procedural rights to which he was entitled and that the NYHRD's determination was not arbitrary and capricious."  *Id.* at 484.  Critically, judicial review by a New York state court "assure[s] that a claimant is not denied any of the procedural rights to which he was entitled and that the NYHRD's determination was not arbitrary and capricious."  *Id.*; *see also Yan Yam*, 218 F. App'x. at 99 ("While the agency determination in and of itself did not preclude his action, preclusive effect attached once the state court reviewed and affirmed the SDHR's finding of no probable cause.").

Plaintiff has identified no facts from which his case may be distinguished from *Kremer*, nor a basis to conclude that he was denied due process.  Plaintiff brought the same objections

raised in the instant motion before the New York State Supreme Court, Dkt. No. 100-3, which found that "NYSDHR gave a full and fair opportunity to both parties to present their claims and subsequent rebuttals," and that its determination "did address his claims but simply rejected them," *Robbins*, 2025 WL 257214, at \*2. Plaintiff does not raise any issues with the judicial review supplied by the New York State Supreme Court and its ruling that the determination was not "arbitrary or capricious, made in violation of lawful procedures, or affected by an error of law." *Id.*

Plaintiff's other arguments do not change that conclusion. The decision of the DHR not to hold a hearing—an issue which Plaintiff raised here and in the Article 78 proceeding—did not deprive Plaintiff of due process. The DHR may issue a determination of no probable cause without a hearing when the evidence shows no merit as a matter of law. *See Kremer*, 456 U.S. at 485 (citing *Flah's, Inc. v. Schneider*, 420 N.Y.S.2d 283, 284 (2d Dep't 1979)). First, "New York requires the NYHRD to make a full investigation, wherein the complainant has full opportunity to present his evidence, under oath if he so requests." *Id.* (citing *State Div. of Human Rights v. New York State Drug Abuse Control Comm'n,* 399 N.Y.S.2d 541, 544 (4th Dep't 1977)). And "[a]s long as a petitioner has a full opportunity to present his claims, neither a hearing nor a confrontation conference is mandated." *Gleason v. W.C. Dean Dr. Trucking, Inc.*, 646 N.Y.S.2d 20, 21 (2d Dep't. 1996); *Chirgotis v. Mobil Oil Corp.*, 512 N.Y.S.2d 686, 688 (2d Dep't 1987) ("It is within the discretion of the DHR to decide the method or methods to be employed in investigating."). The New York Supreme Court determined that the DHR had performed a full investigation. *Robbins*, 2025 WL 257214, at \*2.

The DHR's decision not to turn over evidence provided from Candy Defendants to Robbins before denying a hearing similarly did not deprive Plaintiff of due process in light of the New York

Supreme Court's Article 78 review and the conclusion of that review.  The opportunity to rebut opposing evidence is a fundamental component of a full NYHRD investigation.  *See Soellner v. State Div. of Hum. Rts.*, 474 N.Y.S.2d 135, 136 (2d Dep't 1984).  Relevant here, on May 26, 2023, counsel for Candy Defendants provided the DHR a list of former and current employees and their familial/caregiver status in response to evidentiary requests.  Dkt. No. 114-7.  Plaintiff learned of this evidence not from the DHR, but from a Freedom of Information Law Request on September 1, 2023, after the DHR's determination.  Dkt. No. 114-7.  Robbins claims he "never had any opportunity to refute this additional evidence, because it was not disclosed to Plaintiff until after the Article 78 Petition was filed."  Dkt. No. 113 at 6.  But irrespective of whether Plaintiff had the chance to rebut that evidence before the DHR, it was provided to the New York Supreme Court on October 5, 2023.  Dkt. No. 100-4 at 2.  As described, the court found that the DHR decision was not "made in violation of lawful procedures, or affected by any error of law," *Robbins*, 2025 WL 257214, at *2, thereby assuring "that a claimant is not denied any of the procedural rights to which he was entitled and that the NYHRD's determination was not arbitrary and capricious." *Kremer*, 465 U.S. at 484.

## II.    The Fanatics Defendants' Motion to Dismiss

The Fanatics Defendants move to dismiss the FMLA claims against them on the grounds that the Complaint fails to plead that the Fanatics Defendants were the Plaintiff's employer. Plaintiff has plead sufficient facts to allege that the Fanatics Defendants and Candy Digital operated as a single integrated employer.  Accordingly, the Fanatics Defendants' motion to dismiss is denied.

"'[A] group of distinct but closely affiliated entities should be treated as a single employer,' when they operate as a 'single integrated enterprise.'"  *Robbins*, 2024 WL 5056429, at *20 (quoting *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (Nathan, J.)).  The

28

single integrated enterprise test examines "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995) (citation omitted). "Although no one factor controls the analysis, the second, 'centralized control of labor relations,' is the most significant." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 156 (2d Cir. 2014) (quoting *Cook*, 69 F.3d at 1240). For a 'single integrated enterprise" claim to survive a motion to dismiss, "a plaintiff must at least allege facts so that the claim is plausible and gives fair notice to defendants of his theory." *Stinson v. City Univ. of New York*, 2018 WL 2727886, at *9 (S.D.N.Y. June 6, 2018).

Plaintiff has plausibly alleged that there exists between the Fanatics and Candy Defendants centralized control of labor relations. Plaintiff has plead that his final interview was with Fanatics' CTO, that "[p]laintiff would not have been hired unless [Fanatics'] CTO approved," and that Fanatics approved the equity terms of Candy Digital employees' compensation. Complaint ¶¶ 28, 38, 40. Such control over the hiring process is indicative of control over labor relations. *See Cook*, 69 F.3d at 1241 (processing of employment applications and approval of hires supported finding of parent company exercising centralized control of labor relations); *Horyczun v. Miller Environmental Grp.*, 2022 WL 4079578, at *3 (E.D.N.Y. Sept. 6, 2022) (finding centralized control of labor when parent corporation approved hires at subsidiary). Although this Court previously found mere "advice and guidance" from the Fanatics Defendants to the Candy Defendants was insufficient to establish a joint employment relationship in the past, *Robbins*, 2024 WL 5056429, at *22, it is now clear that Fanatics' involvement in the hiring process far surpassed that.

Plaintiff has also pled a plausible case for the interrelation of the two entities' operations in areas pertaining to his FMLA interference claims. Fanatics reviewed Candy Digital's employee code of conduct and benefits policies to establish uniformity between the two entities. Complaint ¶ 22. This oversight resulted in changes to Candy Digital's policies communicated by Fanatics' human resource department. *Id.* ¶ 30. Fanatics' role in setting the terms of Candy Digital's daily operations renders interrelation reasonably inferable. *Cf. DeNardi v. DRA Imaging, P.C.*, 605 F. Supp. 2d 550, 558 (S.D.N.Y. 2009) (inferring interrelation of human resources operations from other firm's name appearing on employee benefits checklist and employee handbook).

Finally, Plaintiff has alleged common management and control. Candy Defendants were required to appoint board members and a board chair of Fanatics Defendants' choosing. Complaint ¶¶ 18–19. Plaintiff met monthly with Fanatics' Chief Information Security Officer as part of his job duties and Candy Digital employees were directed and supervised by Fanatics executives while working on joint projects. *Id.* ¶¶ 24, 41. *See St. Jean v. Orient-Express Hotels Inc.*, 963 F. Supp. 2d 301, 308 (S.D.N.Y. 2013) (reporting of employees to separate firm supported finding of interrelation); *Chen v. TYT East Corp.*, 2012 WL 5871617, at *4 (S.D.N.Y. Mar. 21, 2012) (finding interrelation when parent corporation board chairman personally oversaw renovations at subsidiary restaurant). The allegation that Fanatics owned a controlling stake in Candy Digital establishes common ownership. Complaint ¶ 17; *Robbins*, 2024 WL 5056429, at *22.

It is sufficient at this early stage that Plaintiff has alleged Fanatics Defendants' control over the policies lying at the core of his remaining claim of FMLA interference. *Brown v. Daikin America, Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) ("Whether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss."). Plaintiff has plausibly alleged that Fanatics "made the final decisions

regarding [the] employment matters" being challenged.  *Id*. at 227 (quoting *Cook*, 69 F.3d at 1240). In totality, Plaintiff adequately pleads "an amount of participation [that] is sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions."  *Cook*, 69 F.3d at 1241.

## CONCLUSION

The Candy Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  The Fanatics Defendants' motion to dismiss is DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 99, 102.


SO ORDERED.

Dated: August 18, 2025
     New York, New York                            LEWIS J. LIMAN
                                        United States District Judge